UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BING MA,

          Plaintiff,

                                      Case Nos. 08-CV-14008,
                                                08-CV-14009

vs.

                                                HON. GEORGE CARAM STEEH

CONDELEEZZA RICE, ET AL,

          Defendants.

_____/

<u>ORDER DISMISSING PLAINTIFF'S MANDAMUS ACTION FOR LACK OF
JURISDICTION AND DENYING PLAINTIFF'S MOTION FOR PRELIMINARY
INJUNCTION AS MOOT</u>

<u>Pro</u> <u>se</u> plaintiff Bing Ma has filed a complaint for a writ of mandamus and a motion for a preliminary injunction against defendants seeking an order compelling them to immediately adjudicate her application to adjust status to that of permanent resident. Defendants have moved to dismiss the complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) and for failure to state a claim pursuant to Rule 12(b)(6). This matter shall be decided based on the written submissions without oral argument. Because the Court lacks subject matter jurisdiction over Ma's complaint, defendants' motion to dismiss shall be granted and plaintiff's motion for injunctive relief shall be denied as moot.

BACKGROUND

A.    <u>The Parties</u>

Plaintiff Bing Ma ("Ma") is an adult national of China who works as a research

faculty member at the University of Michigan.  On September 17, 2008, she filed a mandamus complaint seeking to compel defendants to process her application to adjust status.  Defendants in that lawsuit are Michael Chertoff, Secretary of Department of Homeland Security; Jonathon Scharfen, Acting Director of United States Citizenship and Immigration Services (USCIS); and Gerard Heinauer, Director of USCIS, Nebraska Service Center.   For purposes of this order, the defendants shall be referred to collectively as "the government."

On the same date that she filed her complaint, Ma filed a motion for preliminary injunction, which was filed as a separate lawsuit.  That motion involves the same parties, with the exception of adding as a defendant Condeleezza Rice, Secretary of State.  The Court ordered the government to respond to the motion for preliminary injunction on an expedited schedule and the government complied with that order.  The government discussed the preliminary injunction motion on the merits without addressing whether or not this Court has subject matter jurisdiction.  However, the government filed a motion to dismiss, for lack of subject matter jurisdiction, the complaint seeking mandamus relief.  Ma has not filed a response to the motion to dismiss and the time period for doing so has expired.  The motion for preliminary injunction and the mandamus complaint involve the same claims and parties.  In essence, they are one and the same case and the Court shall treat them as such.  Were Ma represented by counsel, and not proceeding pro se, this Court has no doubt that she would have filed the preliminary injunction motion under the same docket number as the original complaint, rather than paying the filing fee twice.

B.    Plaintiff's Application to Adjust Status

According to the declaration of Gerald Heinauer ("Heinauer"), the Director of the Nebraska Service Center for the USCIS, plaintiff filed a Form I-485, Application for Adjustment of Status to Permanent Resident, on September 29, 2005.  (08-14008, Doc. 10, Exhibit B at ¶ 10).   That application was based on her I-140 Petition for Alien Worker, which she filed on her own behalf on that same date, thus, establishing her priority date as September 29, 2005.  (Id. at ¶ 7, 13).  The purpose of the I-140 petition and I-485 filing is to obtain lawful permanent resident status (green cards) for the alien worker and any qualified derivative spouse and children. (Id. at ¶ 10).  On November 10, 2005, Ma's Form I-140 petition was approved in the second preference employment category for advanced degree professionals.  (Id. at ¶ 7).

One week later, on November 16, 2005, Ma's name check was electronically submitted to the Federal Bureau of Investigation ("FBI").  Id. at ¶ 15, 18.  While the FBI name check was pending, Ma sought the help of Senator Debbie Stabenaw and first lady Laura Bush to expedite her application.  (08-14008, Doc 1 at ¶ 22-23). Approximately two years later, on November 23, 2007, the name check was complete. (Id. at ¶ 18).  Defendants explain the two-year time period for processing the name check is attributable to the millions of name check requests that the USCIS has submitted to the FBI since 9/11.  (Id. at ¶ 16).  As of May, 2008, there were 269,943 name checks pending, and of those, 185,162 had been pending for over six months. (Id.)  At the time that Ma's name check was complete, plaintiff did not have a visa number available to her.  (Id. at ¶ 18).

Ma's fingerprints were taken on May 10, 2007.  (Id. at ¶ 19).  Because the fingerprint check is only good for fifteen months, she was rescheduled to report for

3

refreshed fingerprints on September 19, 2008.  (Id.)  Ma filed the instant lawsuit on September 17, 2008 based on the assumption, gleaned from information published in the Visa Bulletin, that a visa would be available for her in September, 2008, but would no longer be available in October, 2008.  In fact, in September, 2008, the State Department opened up China second preference visa numbers up to August 1, 2006 priority dates to maximize use of all of the 2008 visa numbers which could not be carried over at the end of the year.  (Id. at 22).  Ma's fingerprint results posted on September 22, 2008 but there were no visas available at that time.  (Id. at ¶ 21).

The government also relies on the declaration of Charles W. Oppenheim, who is employed by the State Department as the Chief of the Immigrant Visa Control and Reporting Division of the Visa Office ("VO") who avers that visas for Chinese applicants in the employment second preference category became unavailable in early September, 2008, and thus, no immigrant visa numbers were available for Ma.  (08-14008, Doc. 10, Exhibit A at ¶ 3).  Based on the large pool of applicants in the China employment second preference category in September, 2008, the Department of State retrogressed the cut-off date for that category in the October 2008 visa bulletin so that visas are only available to alien workers with a priority date earlier than April 1, 2004.  (08-14008, Doc. 10, Exhibit B at ¶ 22).   Ma's application was filed about a year after this priority date, so she was not eligible for a visa when she became documentarily qualified on September 22, 2008.

Ma, on the other hand, counters that visas were available in September, 2008, based on information published on an Internet website entitled TrackGG.com.  She relies on a spread sheet from that online site which purports to show that another

4

China-born applicant had a visa issued on September 30, 2008.  (08-14008, Doc. 11, Exhibit A).  The government responds that information taken from the online site is inherently unreliable as the information is self-reported and cannot be verified by defendants.  The government also suggests many explanations exist for why an applicant might erroneously believe that his visa was issued on September 30, 2008, when in fact, it issued sooner.  For example, applicants do not receive a copy of their Form I-485 with a dated approved stamp on it, thus applicants are unlikely to know the exact timing of their approval.  While applicants do eventually receive a "welcome" letter notifying them that they will be granted a green card, the letter tends to lag behind actual approval of the Form I-485.  Moreover, the government posits that even if the date of approval of an I-485 by the USCIS is accurately reported on TrackGC.com, that date need not necessarily correspond to the date the visa issued.

Plaintiff also seeks to rely on e-mail messages posted on an immigration website, known as "trackitt,"  which purports to show that some visa applicants had their Form I-485s approved with expired fingerprints.  The government responds that the posted messages do not countermand the agency's long-standing policy and practice of requiring fingerprint checks to be no older than fifteen months.  (08-14008, Doc. 10, Exhibit B at ¶ 19).

Ma complains that immigrants who filed I-485 petitions to adjust status after her have had their petitions finally adjudicated before her.  The government responds that applicants are processed in the order that they become documentarily qualified, that is when the FBI background checks are complete and all necessary evidence is obtained and evaluated, not necessarily in the order in which their I-485s are filed.  When an

5

applicant's name check proceeds quickly, the USCIS does not make the applicant wait until applicants who were filed after her, including those whose FBI name checks are taking a long time, are approved before requesting a visa number. According to defendants, many applicants who filed their I-485 applications to adjust status before her are still awaiting final adjudication on their petitions. The government avers that it is processing Ma's adjustment of status application according to its standard procedures and that her case will be complete as soon as a visa number becomes available to her. (Id. at ¶ 24).

## STANDARD OF LAW

The government has filed its motion to dismiss under Rule 12(b)(1) and 12(b)(6). The 12(b)(6) motion, as well as Ma's motion for injunctive relief, become moot if this Court lacks subject matter jurisdiction. Accordingly, the Court considers the Rule 12(b)(1) motion first. Moir v. Greater Cleveland Reg'l Transit Auth., 895 F.2d 266, 269 (6th Cir. 1990). Plaintiff bears the burden of proving that jurisdiction exists. Id. To defeat a motion to dismiss for lack of jurisdiction, "the plaintiff must show that the complaint 'alleges a claim under federal law, and that the claim is substantial.'" Mich. S.R.R. Co. v. Branch & St. Joseph Counties Rail Users Ass'n, Inc., 287 F.3d 568, 573 (6th Cir. 2002) (citations omitted). The federal question must be presented on the face of the complaint. See Rivet v. Regions Bank of La., 522 U.S. 470, 475 (1998).

## SUBJECT MATTER JURISDICTION

Ma relies on a plethora of theories in support of her claim that this Court has subject matter jurisdiction. First, she argues that the Court has federal subject matter jurisdiction under 28 U.S.C. § 1331 because her cause of action allegedly arises under

the Constitution, including the Fifth Amendment.  She also argues that jurisdiction arises under the Immigration and Nationality Act (INA), 8 U.S.C. § 1101 et seq.; the Declaratory Judgment Act, 28 U.S.C. § 2201; and the All Writs Act, 28 U.S.C. § 1651.  Finally, she claims that jurisdiction exists under the Mandamus Act, 28 U.S.C. § 1361 and the Administrative Procedures Act, (APA), 5 U.S.C. § 701 et seq.[1]

Jurisdiction does not lie under the Federal Question Statute as Ma has no interest, either arising under the Constitution or by federal statute, in seeking lawful permanent resident status.  While Ma's alleged injuries are palpable, including her difficulties in securing research funding, applying for jobs, traveling, and the delay of her ability to apply for naturalization, none of these harms rises to the level of a Constitutional deprivation or the denial of a federal right guaranteed by a Congressional statute or regulation.  An alien seeking lawful permanent resident status cannot show "that [her] interest is one protected by the Constitution or created by statute." Almario v. Att'y Gen'l, 872 F.2d 147, 151 (6th Cir. 1989).  Ma's allegation that jurisdiction lies under the INA also fails.  While the INA authorizes the Attorney General, who in turn transferred his authority to the Secretary of Homeland Security and the USCIS,[2] to adjudicate applications for adjustment of status, 8 U.S.C. § 1255(a), the INA provides the Attorney General with broad discretion, and does not provide any time table for such adjustments.  Maftoum v. Chavez, No. 07-CV-12819, 2007 WL 3203850, *3 (E.D. Mich. Oct. 31, 2007) (Cleland, J.).  The INA does not provide for a private cause of action to

---

[1] In her motion for preliminary injunction, Ma also alleges that jurisdiction lies under Fed. R. Civ. P. 65 but that is a procedural rule only which does not confer jurisdiction.

[2] 6 U.S.C. § 271(b)(5).

7

speed up the processing of an adjustment of status application.  To the extent that Ma seeks to rely on 8 U.S.C. § 1571(b), which provides that "[i]t is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application," that provision does not confer jurisdiction and is non-binding legislative dicta.  Id. (quotations and citations omitted).

Jurisdiction also is lacking under the Declaratory Judgment Act which fails to provide an independent basis for subject matter jurisdiction.  Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671-72 (1950).  Similarly, the All Writs Act, 28 U.S.C. § 1651 (a) provides that "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."  The All Writs Act does not confer jurisdiction on the federal courts.  Syngenta Crop Protection, Inc. v. Henson, 537 U.S. 28, 33 (2002).  It merely allows a court to issue process in aid of its existing statutory jurisdiction, but does not enlarge that jurisdiction.  Id. (citation and quotations omitted).

The Court turns now to the APA and the Mandamus Act as possible grounds for jurisdiction.  For either the APA or the Mandamus Act to apply, the matter at issue must be one that is not committed to agency discretion.  The APA grants courts the power to compel agency action unlawfully withheld or unreasonably delayed.  5 U.S.C. § 706.  However, these provisions of the APA do not apply where the agency action is committed to agency discretion by law.  5 U.S.C. § 701(a).  Similarly, the Mandamus Statute provides that a district court may "compel an officer or employee of the U.S. or any agency thereof to perform a duty owed to the plaintiff."  28 U.S.C. § 1361.  A writ of

mandamus is an "extraordinary" remedy available only in the most compelling cases where the plaintiff can show a clear and indisputable right to the relief sought. In re Bendectin Prod. Liability Litigation, 749 F.2d 300, 303 (6th Cir. 1984) (citations omitted). Mandamus jurisdiction does not exist unless it is shown that the defendant owes the plaintiff a clear *nondiscretionary* duty that he has failed to perform. See Your Home Visiting Nurse Svcs., Inc. v. HHS, 132 F.3d 1135, 1141 (6th Cir. 1997) (citing Heckler v. Ringer, 466 U.S. 602, 616 (1984)). Based on the above law, the determination of whether subject matter jurisdiction exists based on the APA or the Mandamus Act depends on whether or not status adjustment is a matter of agency discretion or a nondiscretionary duty.

An immigrant's status as a permanent resident is governed by 8 U.S.C. § 1255 which provides in relevant part:

> (a) The status of an alien who was inspected and admitted or paroled into the United States or the status of any other alien having an approved petition . . . may be adjusted by the Attorney General, *in his discretion, and under such regulations as he may prescribe* to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is available to him at the time his application is filed.

8 U.S.C. § 1255(a) (emphasis added). Section 1255(a) does not set forth any time limit by which adjustment of status determinations must be made, nor does it suggest any need for expedition. Shen v. Chertoff, 494 F. Supp. 2d 592, 596 (E.D. Mich. 2007) (citations omitted). The government argues that the discretionary adjustment of an alien's immigration status does not fall within the scope of mandamus jurisdiction or relief. Ma alleges that there has been unreasonable delay in the adjudication of her

9

adjustment of status application and she seeks mandamus in the form of this Court ordering the USCIS to assign her an immigrant visa.

This Court addressed the same issue presented here in Xu v. Chertoff, No. 06-15398, 2007 WL 2221401 (E.D. Mich. July 31, 2007) (Steeh, J.). In that case, the plaintiff had been awaiting a final adjudication of his I-485 application to adjust his immigration status to that of permanent resident for two years. Id. at *1. As in this case, plaintiff filed suit requesting that the Court order USCIS to complete the adjudication of his application more quickly. Id. The government argued it could not process his application until his FBI name check cleared. Id. This Court dismissed his complaint for lack of subject matter jurisdiction finding that the adjustment of an alien's immigration status, including the time it takes to complete the adjustment, are matters within the agency's sound discretion. Id. at *3. Because adjustment of status is discretionary, this Court ruled that it lacked jurisdiction under the APA or the Mandamus Act to compel the USCIS to process an adjustment of status application more quickly. Id.

In its earlier case, this Court noted that district courts across the country have split on the question of whether the government has a clear non-discretionary duty to make a decision within a reasonable time. Id. at *2. Many courts have held that all aspects of status adjustment, including their timing, are matters of discretion. Id. (collecting cases). Some courts, however, have taken the opposite view and have opined that the USCIS has a nondiscretionary duty to complete status adjustments, and other immigration matters, in a reasonable time. Id. (collecting cases). As far as this Court is aware, no Court of Appeals has yet ruled on the issue.

10

The government points out in its brief here that the overwhelming majority of judges in this district have held that the USCIS has discretion in matters pertaining to the timing of the adjudication of applications for adjustment of status.  See Shen v. Chertoff, 494 F. Supp. 2d 592 (E.D. Mich. 2007) (Friedman, J.), Yazbek v. Chertoff, NO. 07-12566, 2007 WL 2875462 (E.D. Mich. Oct. 1, 2007) (Zatkoff, J.); Kiromi v. USCIS, No. 07-10446, 2007 WL 2049521 (E.D. Mich. July 13, 2007) (Cook, J.); Azadegan v. Chertoff, No. 07-11238, 2007 WL 2822783 (E.D. Mich. Sept. 27, 2007) (Borman, J.); Kuchumov v. Chertoff, No. 07-12277, 2007 WL 2782045 (E. D. Mich. Sept. 24, 2007) (Duggan, J.); Chehab v. Chertoff, No. 07-11068, 2007 WL 2372356 (E.D. Mich. Aug. 17, 2007) (O'Meara, J.); Korobkova v. Jenifer, No. 07-11335, 2007 WL 3245178 (E.D. Mich. Nov. 2, 2007) (Gadola, J.); Maftoum v. Chavez, No. 07-12819, 2007 WL 3203850 (E. D. Mich. Oct. 31, 2007) (Cleland, J.); Carter v. Dep't of Homeland Sec., NO. 07-12953, 2008 WL 205248 (E.D. Mich. Jan. 24, 2008) (Edmunds, J).  But see, Obeid v. Chertoff, No. 07-10937, 2008 WL 795838 (E.D. Mich. 2008) (Tarnow, J.).  Thus, these courts have universally held that they lack subject matter jurisdiction over claims seeking to compel the USCIS to process an application for adjustment of status.

There is no statute or regulation that imposes on the USCIS a time deadline for the processing of I-485 applications.  In its earlier order in Xu, this Court noted that it is undisputed that the final decision of the Attorney General, who has delegated his authority to the USCIS, and the process for arriving at that decision, have been committed to the Attorney General's (and thus, the USCIS's) discretion by 8 U.S.C. § 1255.  Thus, this Court ruled that the time period it takes to process an application must also fall within the agency's discretion so long as discretionary action is being taken to

11

process the application. The policy reason behind this holding is that FBI background checks are imperative to protecting the nation's security in a post 9/11 world, and the agency's limited resources necessarily requires that there will be some delay in the adjudication of applications to adjust status.

In Xu, this Court left open the possibility that mandamus review might nonetheless be appropriate in exceptional circumstances, such as where some deliberate inaction or bad faith cause the delay. This Court also opined that in the case of excessive delay, that might prove bad faith and thus, might satisfy a plaintiff's burden of pleading that subject matter jurisdiction exists. Indeed, another district court noted that it is possible that a delay might be so unreasonable as to amount to a refusal to process the application, in which case jurisdiction might arise. Safadi v. Howard, 466 F. Supp. 2d 696, 700 (E.D. Va. 2006). In Safadi, there was a four year delay in the processing of plaintiff's application to adjust status, and the court found that even this significant delay was not tantamount to abandonment because national security concerns require caution and thoroughness in FBI background checks which may not be sacrificed for the purpose of expediency.[3] Id. at 701. There has been no showing of deliberate inaction or bad faith in this case. In Ma's case, the two year delay is attributable solely to the FBI name check and fingerprint checks which are especially

---

[3]But see Kashkool v. Chertoff,553 F. Supp. 2d 1131, 1147 (D. Ariz. 2008) (six-year delay in processing alien's application for adjustment of status to permanent resident unreasonable); Zalmout v. Gonzalez, No. 07-12575, 2007 WL 3121532, *3 (E.D. Mich. Oct. 24, 2007) (Duggan, J.) (setting evidentiary hearing to determine if four year delay in adjudication of plaintiff's application might constitute abandonment). Many courts, however, have found that a two-year delay does not constitute an abandonment. See e.g. Maftoum v. Chavez, No. 07-12819, 2007 WL 3203850, *3 n.10 (E.D. Mich. Oct. 31, 2007); Xu v. Chertoff, No. 06-15398, 2007 WL 2221401, *3 n.1 (E.D. Mich. July 31, 2007).

critical background checks for protecting the nation's security interests. While this Court is sympathetic to Ma's frustration to the time involved in deciding her request to adjust status, this Court lacks jurisdiction to compel the USCIS to process her claim more quickly than it is now doing. The government has stated that Ma's claim is now documentarily qualified for adjudication, as all her security and background checks are complete, and thus, she will receive final adjustment of status as soon as a visa in her preference category becomes available. It is the Court's sincere hope that this will happen soon.

## CONCLUSION

This Court lacks subject matter jurisdiction because the time period for adjustment of status is a matter committed to the government's discretion. As no subject matter jurisdiction exists, defendants' 12(b)(6) motion and Ma's motion for preliminary injunction are moot and no further consideration is necessary. Defendants' motion to dismiss (Doc. 9 in the 08-14009 case) hereby is GRANTED; plaintiff's complaint (Doc. 1 in the 08-14009 case) hereby is DISMISSED WITHOUT PREJUDICE, and plaintiff's motion for injunctive relief (Doc. 1 in the 08-14008 case) hereby is DENIED AS MOOT.

SO ORDERED.

Dated: January 22, 2009

                                                s/George Caram Steeh
                                                GEORGE CARAM STEEH
                                                UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on January 22, 2009, by electronic and/or ordinary mail.

s/Josephine Chaffee
Deputy Clerk